UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JACK ROPER** : | Case No.: | 07-cv-0148 (JDB) |
|     **Petitioner** : | | |
| : | | |
| v. : | | |
| : | | |
| **U.S. PAROLE COMMISSION et al.,** : | | |
| : | | |

**U.S. PAROLE COMMISSION'S OPPOSITION TO
PETITIONER'S PRO SE PETITION FOR A WRIT OF HABEAS CORPUS**

The U.S. Parole Commission, through its attorney, the United States Attorney for the District of Columbia, hereby opposes Petitioner's pro se Petition for a Writ of Habeas Corpus. In his petition, Petitioner raises the following claims: 1) his Sixth Amendment right to confront and cross-examine an adverse witness at his parole revocation hearing was violated when this adverse witness, a victim in an underlying criminal case, failed to appear at his parole revocation hearing, and this witness's underlying statement to the police was considered by the hearing examiner when he recommended to the U.S. Parole Commission ("Commission") that Petitioner's parole should be revoked; and 2) his constitutional due process rights were violated when the hearing examiner recommended that Petitioner's parole be revoked after only considering the content of the arresting officer's police report.  Based on the facts and the legal principles set forth in this opposition, Petitioner's petition for habeas relief should be summarily denied.

**FACTUAL AND PROCEDURAL HISTORY**

On June 29, 1999, the Honorable Michael Rankin, sentenced Petitioner to an aggregate maximum term of 10 years of imprisonment for the offenses of First-Degree Theft and

Attempted Robbery, in Criminal Case No. F-9103-98.  See Exhibit A (Bureau of Prisons Sentence Monitoring Computation Data).[1]  On January 9, 2004, Petitioner was released on parole, and his period of parole was due to expire on December 15, 2008.  See Exhibit B (Certificate of Parole, January 9, 2004).

On March 8, 2005, the Commission issued a decision to revoke Petitioner's parole following a revocation hearing.  See Exhibit C (Notice of Action, March 8, 2005).  At that time, the Commission ordered that Petitioner serve a 10-month term of imprisonment, and ordered that he be re-paroled on October 27, 2005.  Id.  When Petitioner was re-paroled in October 2005, the Commission determined that his sentence was to expire on December 3, 2009.  See Exhibit D (Certificate of Parole, October 13, 2005).

On March 14, 2006, Petitioner's community supervision officer ("CSO"), Esperita Garrison, advised the Commission that Petitioner had violated the conditions of his parole by using drugs, failing to report for drug testing, failing to comply with the requirement of sex offender registration, failing to report to his CSO, and failing to notify his CSO of a change in his address. See Exhibit E (Alleged Violation Report, March 14, 2006).  Due to Petitioner's failure to comply with his conditions of parole, CSO Garrison recommended that the Commission issue a warrant for Petitioner's arrest.  Id.  Additionally, on March 24, 2006, CSO Garrison advised the Commission that Petitioner had been arrested on March 21, 2006 and charged with Unauthorized Use of a Vehicle ("UUV"), and again recommended that the

---

[1] According to Petitioner's community supervision officer's violation report of March 14, 2006, the judge sentenced Petitioner to three and one third years to 10 years of imprisonment on the First-Degree Theft charge (Count E), and to one to three years of imprisonment for the charge of Attempted Robbery (Count F).  See Exhibit E at 1 (Alleged Violation Report, March 14, 2006).  Judge Rankin also ordered that defendant's sentences run concurrently.  Id.

Commission issue a warrant for Petitioner's arrest. See Exhibit F (Alleged Violation Report, March 24, 2006). Consequently, on April 19, 2006, the Commission issued a parole violator warrant for Petitioner's arrest. See Exhibit G (Warrant and Return). On that date, the Commission also charged Petitioner with failing to submit to drug testing, using drugs, failing to report to his CSO as directed, failing to register as a sex offender, and violating the law by committing the offense of UUV. See Exhibit H (Warrant Application, April 19, 2006). On August 10, 2006, the U.S. Marshal's Service executed the Commission's warrant. See Exhibit G at 2.

On August 22, 2006, a hearing examiner with the Commission conducted a probable cause hearing and determined that there was probable cause to believe that Petitioner had violated the terms of his parole. See Exhibit I at 5 (Probable Cause Hearing Digest, August 22, 2006). During the probable cause hearing, Petitioner denied committing the offense of UUV, and he requested that the victim in the UUV case, Alfreda Arrington, attend his parole revocation hearing. Id.

On September 20, 2006, a hearing examiner with the Commission presided over Petitioner's parole revocation hearing. See Exhibit J (Hearing Summary, September 20, 2006). Metropolitan Police Department Officer M. Fawzi, who had arrested petitioner on March 21, 2006 for UUV, appeared at the hearing. Id. at 1. However, the victim, Ms. Arrington, was not present. Id. At the hearing, Petitioner testified and denied that he committed the offense of UUV. Id. at 3. However, Petitioner explained that Ms. Arrington, who was his girlfriend at the time of his arrest, had reported that the car had been stolen because she was angry with him. Id. Officer Fawzi testified that after he stopped Petitioner for having an object hanging off of the

3

rearview mirror of the car, which was obstructing the windshield, he eventually learned that Petitioner was driving a car that had been previously reported as stolen. Id. Officer Fawzi testified that Petitioner had told him that the car belonged to his girlfriend, and that she had reported it as stolen because Petitioner had not returned it to her on time. Id. Officer Fawzi also testified that he contacted the victim, who told him that Petitioner had taken the car without her permission and that she had waited 24 hours before filing a police report claiming that her car had been stolen. Id.

During the hearing, Petitioner provided the hearing examiner with a written statement that was allegedly written by the victim, which stated that the charge of UUV was the result of a misunderstanding. Id. at 4. In the statement, the victim stated that Petitioner had permission to use the vehicle, but failed to return the vehicle after several hours; thus, she reported it as stolen. Id. In a separate written statement, the victim stated that she had no intention of testifying against Petitioner at the revocation hearing, and she provided her telephone number in the statement in order to provide additional information if necessary. Id. Upon reviewing the victim's statement, the hearing examiner called the victim's telephone phone number during the hearing in order to verify the authenticity of the two statements that Petitioner had presented on her behalf. Id. During her conversation with the hearing examiner, the victim stated that she had written both statements. Id. However, the victim told the hearing examiner that she did not recall talking with the arresting officer regarding this case. Id. When the hearing examiner read the victim's statement that was contained in the police report, the victim ultimately admitted that

she could have made that statement to the police officer. Id.[2]

After considering the testimony that was provided at the hearing by Petitioner and the arresting officer, the written and verbal statements from the victim, and the information contained in the police report, the hearing examiner found the arresting officer's testimony to be more credible than Petitioner's or the victim's written statements. Id. The hearing examiner also concluded that Petitioner had committed the offense of UUV, established that Petitioner's

---

[2] On March 23, 2007, the government received a copy of the audiotape of Petitioner's revocation proceedings. A copy of this tape is available for this Court to review.

At the beginning of the hearing, Petitioner admitted to committing the first three violations that were contained in the CSO's report; however, he denied that he failed to comply with the requirement of sex offender registration and with committing the offense of UUV. Also, at the beginning of the hearing, Petitioner's counsel told the hearing examiner that although Petitioner had requested that the victim be present for the revocation hearing, the victim was not going to be present for the hearing. However, Petitioner did not object to the victim's absence. Instead, he relied upon the victim's written statements in lieu of her live testimony.

During the proceedings, the hearing examiner called and spoke with the victim on the telephone; however, this conversation was done off the record and was not captured on the audiotape. At the conclusion of Petitioner's brief cross-examination of the arresting officer, the hearing examiner told the parties that the victim had admitted to him that she wrote the statements that Petitioner provided. However, when the hearing examiner told the victim about the contents of the police report that was filed at the time of Petitioner's arrest, which contained statements that contradicted with the written statements the victim provided to defendant for his parole revocation hearing, the victim admitted to the hearing examiner that she could have made the statements that were contained in the arrest report. It is unclear from the record whether the hearing examiner provided defense counsel with an opportunity to cross-examine the victim about this issue. However, when the hearing examiner shared this information with the parties, Petitioner stated that she would have explored that issue further with the victim if the victim had appeared for the hearing. In an effort to explain to the hearing examiner why the victim would have given such testimony, Petitioner stated that the victim was probably nervous during her conversation with the hearing examiner. Despite this exchange between Petitioner and the hearing examiner, Petitioner did not formally object to the victim's absence, nor did he argue that he was prejudiced by his inability to ask her additional questions during the proceedings. Rather, Petitioner proceeded with the hearing by presenting a witness to testify about an unrelated matter, and by presenting arguments regarding the violations that he denied committing.

guideline range for imprisonment to be between 18 to 24 months based upon this offense, and ultimately recommended that Petitioner's parole be revoked and that he be re-paroled after the service of 18 months of imprisonment. Id. at 5. The Commission ultimately agreed with the hearing examiner and revoked Petitioner's parole on October 10, 2006. See Exhibit K (Notice of Action, October 10, 2006). The Commission also forfeited all of the time Petitioner had previously spent on parole, and ordered that he be re-paroled on February 10, 2008. Id.

On October 26, 2006, Petitioner appealed the Commission's decision to the Commission's National Appeals Board (NAB). See Exhibit L (Appeal). The basis of Petitioner's appeal was that he was denied the right to confront and cross-examine adverse witnesses because the hearing examiner spoke with the victim of the UUV offense on the phone and did not permit Petitioner to question her. Id. Petitioner also argued that he had not been given proper credit for all of the time that he had previously spent in custody in his UUV case. Id. The NAB issued its decision affirming the Commission's decision on January 23, 2007. See Exhibit M (Notice of Action on Appeal, January 23, 2007). Specifically, the NAB found no merit to Petitioner's argument that he did not have the opportunity to confront and cross-examine the victim, whose statements were considered by the Commission when it decided to revoke his parole, finding that the hearing examiner's telephone conversation with the victim only served to verify that the documents that Petitioner provided to the hearing examiner were actually the victim's statements. Id. The NAB also found that the victim did not intend to attend the hearing, and that Petitioner had failed to object to her absence from the hearing; thus Petitioner had waived his right to confront this witness. Id. Finally, the NAB found that petitioner's jail credit had been computed correctly. Id. at 1-2.

On December 27, 2006, Petitioner filed a pro se Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, which was filed on January 22, 2007, in the U.S. District Court for the District of Columbia. In his petition, Petitioner claims that he is entitled to habeas relief because he was denied his Sixth Amendment right to confront and cross-examine the victim, who had been under subpoena to appear and testify at the hearing, but who failed to appear for the hearing. Petition at 2-5. Specifically, Petitioner claims that he was denied the ability to cross-examine the victim when she provided the hearing examiner with testimony over the telephone during his revocation hearing, which was ultimately considered when the Commission followed the recommendation of its hearing examiner to revoke Petitioner's parole. Id. at 1-2. Petitioner also claims that his constitutional due process rights have been violated because the Commission revoked his parole solely on the information that was contained in the arresting officer's police report. Id. at 3. Consequently, Petitioner is requesting that a new parole revocation hearing be held, where he will be permitted to cross-examine any adverse witnesses who appear at the hearing. Id. at 4. Based on the following reasons, Petitioner's habeas petition should be summarily denied.

## ARGUMENT

### A. The Commission Did Not Violate Petitioner's Right To Confront and Cross-Examine the Victim at His Parole Revocation Hearing

A parolee who has been charged with the violation of his parole, who has not been convicted of any criminal offense subsequent to release on parole, and who denies the more serious of the violation charges against him, is entitled to a local revocation hearing, or a hearing that is held "at or reasonably near the place of the alleged parole violation or arrest." 28 C.F.R. § 2.102. At that local revocation hearing, the parolee may request the presence of adverse

witnesses and may cross-examine these witnesses.  See 28 C.F.R. §2.103(c); see also Morrissey v. Brewer, 408 U.S. 471, 487 (1972)(adverse witness is "person who has given adverse information on which parole revocation is to be based").  Pursuant to Morrissey, the parolee must be given the opportunity to confront and cross-examine the adverse witnesses unless "good cause" is found for the witness's non-appearance.  Id. at 489 ("the minimum requirements of due process [at a revocation hearing] ...include...the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation")).

It is a well established principle in the law that parole revocation hearings are not to be equated with a criminal trial.  Morrissey, 408 U.S. at 489 ("[w]e have no thought to equate this second stage of parole revocation to a criminal prosecution in any sense") Black v. Romano, 471 U.S. 606, 613 (1985)("our precedents have sought to preserve the flexible, informal nature of the revocation hearing, which does not require the full panoply of procedural safeguards associated with a criminal trial"); Maddox v. Elzie, 238 F.3d 437 (D.C. Cir. 2001)("Morrissey makes clear that parole revocation is not the continuation of a criminal trial, but a separate administrative proceeding at which the parolee does not possess the same rights as a criminal defendant at trial").[3]

In order to help Petitioner prove that he did not commit the offense of UUV, Petitioner provided the hearing examiner with a statement from the victim which stated that the whole

---

[3] Petitioner's reliance on Crawford v. Washington, 124 S.Ct. 1354 (2004), among his points and authorities in his brief, is misplaced because that case concerned the Sixth Amendment right of confrontation in a criminal trial.  See Ash v. Reilly, 431 F.3d 826, 829-30 (D.C. Cir. 2005).

matter arose from a misunderstanding.  Since the victim's statement was being offered to assist Petitioner with his claim of innocence, Petitioner failed to establish that the victim was an "adverse witness," who he needed to cross-examine.  Furthermore, even if Petitioner could establish that the victim was an adverse witness at the parole revocation hearing, Petitioner's claim still should fail because he waived his right to cross-examine her at the hearing when he failed to object to her absence.  See Duckett v. Quick, 282 F.3d 844, 848 (D.C. Cir.), cert. denied, 537 U.S. 863 (2002); Allston v. Gaines, 158 F.Supp. 2d 76, 80 (D.D.C. 2001).

      Indeed, Petitioner knew in advance that the victim, a witness he requested to be present at the hearing, was not going to be present; therefore, he submitted two written statements from her that were to be accepted in lieu of live testimony from her.  One of the victim's statements that was offered by Petitioner contained information that supported Petitioner's testimony that the victim's report to the police regarding her car was the result of a misunderstanding.  Furthermore, the victim indicated in a written statement that she did not intend to offer any testimony against Petitioner.  Moreover, Petitioner also failed to object to the victim's absence from the hearing after the victim spoke with the hearing examiner over the telephone and confirmed that she may have made statements to the police that contradicted the written statements that she submitted in lieu of her live testimony. Rather, Petitioner's counsel merely speculated that the victim may have been nervous while speaking with the hearing examiner, and this may have caused her to provide such information to the hearing examiner.   Petitioner also continued to proceed with the revocation hearing by presenting an additional witness to testify about an alleged violation of his parole that he had already conceded to at the beginning of the hearing, and by presenting further argument about the allegations that he was denying.  Thus,

9

based on the record in this case, the hearing examiner had a basis to conclude that Petitioner had waived his right to confront the victim when Petitioner proceeded with the hearing in the victim's absence.

Even if Petitioner did not waive his right to cross-examine the victim in this case, the absence of an adverse witness does not violate a parolee's due process rights unless the parole shows prejudice from his inability to cross-examine the adverse witness. Jackson, supra 323 F.3d at 131. Whether the parolee has been prejudiced depends upon the quality and quantity of non-hearsay and reliable hearsay evidence supporting the decision to revoke parole. See Ash supra, 431 F.3d at 830; Maddox, supra 238 F.3d at 244. In this case, the Petitioner cannot establish that he was prejudiced by the inability to cross-examine an adverse witness because the adverse witness *testified* *favorably* for Petitioner at the revocation hearing, confirming that she had written statements provided by Petitioner. Thus, Petitioner cannot establish that he was prejudiced by the absence of cross-examination, because the adverse witness largely provided exculpatory testimony even in the absence of cross-examination, and Petitioner has not set forth what additional exculpatory testimony he would have elicited had he been given the opportunity to cross-examine the witness.

Furthermore, Petitioner knew that the victim was not going to appear at his parole revocation hearing, and he provided two written statements from her that supported his testimony in lieu of her presence at the hearing. Thus, Petitioner failed to establish how he his ability to defend himself at the hearing was diminished because of the victim's absence from the hearing, and his claim for habeas relief in this regard should be denied.

>   B.   The Commission's Reliance on Information In The Police Report When It Revoked Petitioner's Parole Did Not Violate Petitioner's Due Process Rights.

The Commission's decision to revoke parole violates a parolee's constitutional due process rights if it "is either totally lacking in evidentiary support, or so irrational as to be fundamentally unfair." Jackson, supra, 323 F.3d at 129, quoting Duckett, supra, 282 F.3d at 847. In Jackson, the Court of Appeals held that a parole supervision agency may rely upon the content of a police investigative report when it determines whether to revoke a parolee's parole, although it may not rely solely on such a report to revoke parole unless the report contains "strong indicia of reliability." Jackson, 323 F.3d at 131 ("given the indicia of reliability of a police investigative report, the Board's reliance on the hearsay evidence did not render its revocation decision so lacking in support that it was fundamentally unfair"). The task of the Court is to determine the "reliability of the particular hearsay evidence" on which the Commission has relied. Id.

In this case, the Commission did not rely solely on hearsay contained in the police report. Unlike the Jackson case, the arresting officer, who was the author of the investigative report, testified at the hearing and was available for cross-examination. The officer also stated in his report that he recalled stopping the same car the night before Petitioner's arrest, which is information that was corroborated by Petitioner during his testimony at the hearing. Moreover, the police report includes a statement from the victim, which she acknowledged, at the revocation hearing, that she could have made to the arresting officer on the night of Petitioner's arrest. Since the arresting officer was available and testified at the hearing, and since his report contained information that was corroborated by Petitioner and the victim, the Commission could

11

properly conclude that the police report, together with the police officer's testimony, were sufficiently reliable to ensure that Petitioner's due process rights were not violated during the revocation hearing. Jackson, 323 F.3d at 128. Accordingly, Petitioner's claim for habeas relief should be denied on this basis as well.

## CONCLUSION

Based on the foregoing, Petitioner's pro se habeas petition should be summarily denied. A proposed Order is attached.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

ROBERT D. OKUN
Chief, Special Proceedings Division
Assistant United States Attorney

_____/s/_____
TRICIA D. FRANCIS
Assistant United States Attorney
Room 10-447
555 4th Street, N.W.
Washington, D.C. 20530
202-353-9870

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JACK ROPER | : | Case No.: 07-cv-0148 (JDB) |
| | : | |
| v. | : | |
| | : | |
| U.S. PAROLE COMMISSION | : | |

**ORDER**

Upon consideration of the United States Parole Commission's Opposition, and for the reasons stated in the United States Parole Commission's Opposition, it is hereby

ORDERED that the show cause order is discharged and that petitioner's Petition for a Writ of *Habeas Corpus* is denied.

SO ORDERED

_____
HON. JOHN D. BATES
U.S. District Court
District of Columbia

Date: _____

Copies to:

Tricia D. Francis
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Room 10-447
Washington, D.C. 20530

Helen K. Krapels, Esq.
Office of the General Counsel
U.S. Parole Commission
5550 Friendship Boulevard
Suite 420
Chevy Chase, MD 20815

Jack Roper
DCDC # 200-954
District of Columbia Central Treatment Facility
1901 E Street, S.E.
Washington, D.C. 20003

## **CERTIFICATE OF SERVICE**

_____I certify that a copy of the foregoing opposition was filed electronically with the Clerk's Office of the U.S. District Court for the District of Columbia, and was mailed on the _28th_\_\_\_\_ day of March, 2007, to defendant, Jack Roper, DCDC # 200-954, District of Columbia Department of Corrections, Central Treatment Facility, 1901 E Street, S.E., Washington, D.C. 20003.

_____/s/_____
Assistant United States Attorney

.